Filed 8/12/21  P. v. Delaloza CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B300210 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA045286) |
| v. | |
| ALEJANDRO REY DELALOZA, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Roger Ito, Judge.  Reversed and remanded with directions.

Adrian K. Panton, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan

Sullivan Pithey, Senior Assistant Attorney General, Michael R. Johnsen, Supervising Attorney General, and Charles S. Lee, Deputy Attorney General, for Plaintiff and Respondent.

_____

A jury convicted Alejandro Rey Delaloza in December 1999 of two counts of first degree murder with a multiple-murder special-circumstance finding, conspiracy to commit murder and several other serious felonies.  On February 13, 2019, represented by counsel, Delaloza filed a petition for resentencing under Penal Code section 1170.95.[1]  After receiving opposition memoranda from the district attorney and supporting memoranda from Delaloza's counsel, the court denied the petition without issuing an order to show cause, finding Delaloza had failed to make a prima facie showing he was entitled to relief.  We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Delaloza's Trial for Murder and Other Crimes*

Delaloza was charged in a second amended information on November 22, 1999 with conspiracy to commit murder (§ 182, subd. (a)(1)) and two counts of murder (§ 187, subd. (a)) with special allegations that in each offense a principal had been armed with a handgun (§ 12022, subd. (a)(1)).[2]  A multiple-murder special-circumstance allegation (§ 190.2, subd. (a)(3)) was included for each of the two murder counts.  Delaloza was also charged with two counts of robbery (§ 211) and aggravated

_____

[1]  Statutory references are to this code.

[2]  The information and first amended information charged both Delaloza and Richard Penunuri with the crimes.  The second amended information charged only Delaloza.

assault (§ 245, subd. (a)(1)) in connection with an incident unrelated to the murders.

Our opinion affirming Delaloza's convictions described the evidence presented at trial. (*People v. Delaloza* (June 6, 2001, B140454) [nonpub. opn.].) Michael Murillo and Brian Molina were shot to death at close range as they slept on the patio of a home in Whittier. The People's theory of the case was that the murders had been committed by Richard Penunuri, a member of the Eastside Whittier Cole Street gang, who mistook the victims for two other men, Carlos Arias and Luke Bissonnette, and that Delaloza, a member of the same gang, had conspired with Penunuri to murder Arias and Bissonnette and aided and abetted Penunuri in the attack on Murillo and Molina.

Several hours before the murders Delaloza, Penunuri and other members of their gang had committed robbery and assault in a supermarket parking lot. One of their victims testified Penunuri displayed a gun, later shown to be consistent with the murder weapon.

Approximately two hours later, Bissonnette and Arias were sitting on the hood of a car in Bissonnette's grandfather's driveway when Delaloza and Penunuri drove up in Delaloza's car and parked across the street. Penunuri got out of the car. Bissonnette was afraid because he believed Penunuri thought Bissonnette had left the Eastside Whittier Cole Street gang and was associating with a different gang. When Penunuri asked Bissonnette to come with him to Delaloza's car, Bissonnette ran and hid. After Penunuri and Delaloza left, Bissonnette returned to his home.

Arias told the police that, when Penunuri approached Bissonnette in the driveway, Penunuri said things that made

3

Arias believe Penunuri intended to harm both Bissonnette and Arias. They both ran. Just before he ran, Arias saw Penunuri pointing a gun at him. Penunuri chased him a short way but did not catch up to him.

When Bissonnette arrived home, Molina and Murillo were asleep on the patio. The patio was dark; Molina had a sweatshirt covering his face. Bissonnette went inside and prepared to go to bed. Approximately 30 minutes later Bissonnette heard numerous rapidly fired gunshots. After the shooting stopped, he looked out the bedroom window and saw Penunuri running across the street. Neighbors who heard the shots and looked out their windows testified they saw a car matching the description of Delaloza's car driving slowly down Bissonnette's street. No one saw Penunuri get into the car.

Both Molina and Murillo had been shot in the head at close range. Murillo was dead at the scene. Molina died at a hospital.

A witness to the robbery in the parking lot supplied police with the license plate number of the car used by the perpetrators, which led the police to Delaloza. After Delaloza was arrested for robbery, a search of his house uncovered a box of ammunition in the bedroom. A firearms examiner later determined one of the bullets in the box had been loaded and then ejected from the same gun used in the murders.

In a tape recorded statement played to the jury, Delaloza initially denied any involvement in the robbery or murders. He claimed he was at home asleep when these crimes were committed. Confronted with his father's statement he did not return home until 3:45 a.m., Delaloza admitted driving Penunuri to Bissonnette's house around 3:00 a.m. According to Delaloza, Penunuri wanted to speak to a woman named Monique who lived

4

there. They believed Monique might be up at that early hour since she had a baby. Delaloza parked one house down from Bissonnette's and waited in the car while Penunuri went to talk to Monique.[3] When he heard gunshots, he started to leave thinking someone was shooting at Penunuri. Delaloza drove away, Penunuri ran to the car and jumped in saying, "Let's go, man." Penunuri did not tell Delaloza what had happened at Bissonnette's house, and Delaloza did not ask as he drove Penunuri home. Delaloza insisted he did not see Penunuri with a gun at any time during the evening.

   2. *Jury Instructions*

   In its instructions to the jury the trial court defined aiding and abetting using CALJIC No. 3.01 and gave CALJIC No. 3.02 (1997 rev.) explaining liability for natural and probable consequences: "One who aids and abets another in the commission of a crime or crimes is not only guilty of those crimes, but is also guilty of any other crimes committed by a principal which is a natural and probable consequence of the crimes originally aided and abetted. [¶] In order to find the defendant guilty of the crimes of robbery and murder, as charged in Counts 1, 2, 5 and 6, you must be satisfied beyond a reasonable doubt that: [¶] 1. The crime or crimes of robbery and murder were committed; [¶] 2. That the defendant aided and abetted those crimes; [¶] 3. That a co-principal in that crime committed the crime[s] of robbery and murder; and [¶] 4. The crimes of robbery

---

[3]    Monique's mother, called as a prosecution witness, testified she had told Penunuri several months earlier that he and his fellow gang members were not allowed at Monique's house and she never would have allowed Monique to have guests at 3:00 o'clock the morning.

5

and murder of Brian Molina and Michael Murillo were a natural and probable consequence of the commission of the crimes of assault and murder of Luke Bissonnett[e] and Carlos Arias. [¶] You are not required to unanimously agree as to which originally contemplated crime the defendant aided and abetted, so long as you are satisfied beyond a reasonable doubt and unanimously agree that the defendant aided and abetted the commission of an identified and defined target crime and that the crime of robbery & murder was a natural and probable consequence of the commission of that target crime."

The court defined murder using CALJIC No. 8.10, malice using CALJIC No. 8.11, and deliberate and premeditated murder using CALJIC No. 8.20. As to the special-circumstance allegation, the court used a redacted and, as a result, rather garbled version of CALJIC No. 8.80.1 (1997 revision). The first two paragraphs of the instruction were read to the jury as drafted by the CALJIC committee: "If you find the defendant in this case guilty of murder of the first degree, you must then determine if the following special circumstance is true or not true: multiple murder. [¶] The People have the burden of proving the truth of a special circumstance. If you have a reasonable doubt as to whether a special circumstance is true, you must find it to be not true." The court deleted the third paragraph of the proposed pattern instruction, which was inapplicable under the facts of Delaloza's case.

The fourth paragraph as drafted provides, "If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or an aider and abettor or co-conspirator, you cannot find the special circumstance to be true as to that defendant unless you

6

are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of the murder in the first degree. . . ." However, as revised by the court, the jury was instructed, "If you find that a defendant was not the actual killer of a human being, or an aider and abettor or co-conspirator, you cannot find the special circumstance to be true unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, or assisted any actor in the commission of the murder in the first degree."[4]

The court also instructed that Delaloza had been accused of having committed the crime of conspiracy to commit murder, which "requires proof that the conspirators harbored express malice aforethought, namely, the specific intent to kill unlawfully another human being." The court further instructed, "A conspiracy is an agreement entered into between two or more persons with the specific intent to agree to commit the crime of murder and with the further specific intent to commit that crime

---

[4] The instruction the court actually read differed from its own redacted written version: "If you find that a defendant was not the actual killer of a human being, or an aider and abettor or co-conspirator, you cannot find the special circumstance to be true unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, or assisted *in any act in the commission of murder in the first degree.*" (Italics added.) The written version of an instruction generally controls if it conflicts with the oral version. (*People v. Wilson* (2008) 44 Cal.4th 758, 804; *People v. Osband* (1996) 13 Cal.4th 622, 717.) Nonetheless, "the jury is not informed of this rule. It is thus possible the jury followed the oral instruction." (*Wilson*, at p. 804.)

followed by an overt act committed in this state by one or more of the parties for the purpose of accomplishing the object of the agreement." Finally, the court instructed in the language of CALJIC No. 6.11, "A member of the conspiracy is not only guilty of the particular crime that to his knowledge his confederates agree to and did commit, but is also liable for the natural and probable consequences of any crime or act of a co-conspirator to further the object of the conspiracy, even though that crime or act was not intended as a part of the agreed-upon objective and even though he was not present at the time of the commission of the crime or act."

During a pre-instruction conference the prosecutor withdrew her request that the court instruct the jury with CALJIC No. 8.65.[5] Accordingly, the jury was not instructed on the concept of transferred intent.

3. *Verdict, Sentence and Appeal*

The jury convicted Delaloza on all charges and found true the special allegations, including the multiple-murder special-circumstance allegation. The court sentenced Delaloza to an indeterminate state prison term of life without parole plus 29 years to life.

We affirmed the judgment on appeal, rejecting Delaloza's contention the evidence was insufficient to support his convictions for murder and conspiracy to commit murder. We also held the trial court had not abused its discretion by permitting members of the victims' families to wear lapel ribbons

---

[5] CALJIC No. 8.65 provided, "When one attempts to kill a certain person, but by mistake or inadvertence kills a different person, the crime, if any, so committed is the same as though the person originally intended to be killed, had been killed."

in memory of the victims and Delaloza had not been prejudiced by the court's use of a since-disapproved anti-nullification instruction (former CALJIC No. 17.41.1).

In evaluating Delaloza's argument regarding the sufficiency of the evidence, we emphasized that, to convict Delaloza of murder as an aider and abettor, the People did not need to prove he knew Penunuri intended to kill Arias and Bissonnette. "Proof defendant knew Penunuri intended an assault with a deadly weapon would be sufficient under the natural and probable consequences doctrine." Similarly, to convict Delaloza of conspiracy to commit murder, "the People had to prove beyond a reasonable doubt defendant entered into an agreement with Penunuri to commit that offense or another offense, such as assault, of which murder was a natural and reasonable consequence."[6]

After summarizing the evidence at trial, we pointed out, "The People concede there is no direct evidence defendant knew Penunuri intended to assault or kill Arias and Bissonnette and no direct evidence he conspired or aided and abetted Penunuri in the commission of those crimes. Rather, the People maintain the jury could *infer* such knowledge and intent from circumstantial evidence including the group character of gang members." Disclaiming any reliance on the testimony of the prosecution's gang expert that gang members behave in certain ways, we nonetheless held the evidence was sufficient for the jury to find, "when defendant drove Penunuri to Bissonnette's home that

---

[6] In their respondent's brief in Delaloza's direct appeal, the People argued circumstantial evidence supported a finding that he and Penunuri shared a "common intent—and hence agreement—either to commit a murder or armed assault."

9

evening, he knew Penunuri intended to commit an assault on Bissonnette or Arias or both. This is sufficient to uphold his convictions for murder and conspiracy."[7]

### 3. *Delaloza's Section 1170.95 Petition for Resentencing*

On February 13, 2019 Delaloza, represented by the alternate public defender, filed a petition for resentencing under section 1170.95.[8]

On April 4, 2019 the district attorney filed two responses to the petition. In one, the district attorney argued Delaloza was not eligible for relief because the record of conviction, including the jury's verdict, made clear Delaloza had been convicted of first degree murder as a direct aider and abettor who acted with the specific intent to kill. In the second, the district attorney argued

---

[7] We identified as constituting substantial evidence for Delaloza's convictions under the natural and probable consequences doctrine the fact that Delaloza apparently provided the ammunition for Penunuri's gun; Penunuri had displayed the gun during the robbery earlier in the evening and again when initially confronting Bissonnette; Delaloza witnessed Bissonnette and Arias run from Penunuri, who gave chase; Delaloza did not park directly in front of Bissonnette's home when he and Bissonnette purportedly went there to visit Monique and then, immediately after the shots were fired, Delaloza was seen cruising in his car slowly by the house "as if he knew Penunuri would be running out to get into the car"; and Delaloza lied to the police about his whereabouts when the murders were committed.

[8] Although the petition was both incomplete and inaccurate—there was no declaration from Delaloza as required by section 1170.95, subdivision (b)(1)(A), and the petition asserted Delaloza had been convicted of murder under the felony-murder rule—neither the district attorney nor the superior court indicated the petition should be denied on that basis.

10

section 1170.95 violated the separation of powers doctrine and was unconstitutional.

Delaloza, through his counsel, replied to both memoranda, arguing that section 1170.95 was constitutional and that he had made a prima facie showing his murder convictions were based on the natural and probable consequences doctrine. He urged the court to issue an order to show cause and to hold an evidentiary hearing to determine whether he should be resentenced.

After considering "the entirety of the court file," as well as argument from counsel at a hearing on July 29, 2019, the superior court denied the petition. The court explained, "Based on this court's own review of the fact pattern, notwithstanding there was in fact apparently the natural probable consequence given and argued, that the fact pattern simply does not fit the purview of 1170.95 giving Mr. Delaloza the opportunity to or this court the jurisdiction to grant his relief."[9]

Delaloza filed a timely notice of appeal.

## DISCUSSION

1. *Senate Bill No. 1437 and the Section 1170.95 Petition Procedure*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and significantly narrowed the felony-murder exception to the malice requirement for murder. (*People v. Lewis* (July 26,

---

[9] Because it found Delaloza had failed to make a prima facie showing of eligibility for relief, the court stated it was unnecessary to address the prosecutor's argument that section 1170.95 is unconstitutional.

2021, S260598) __ Cal.5th __ [2021 Cal. Lexis 5258, p. 2] (*Lewis*).) With respect to the former change, "to amend the natural and probable consequences doctrine, Senate Bill 1437 added section 188, subdivision (a)(3) (section 188(a)(3)): 'Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.'" (*Gentile*, at pp. 842-843.)

Senate Bill 1437 also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. (See *Lewis*, *supra,* __ Cal.5th at p. ___ [p. 2]; *Gentile*, *supra*, 10 Cal.5th at p. 843.)

If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she was convicted of murder and is eligible for relief (§ 1170.95, subd. (b)(1)(A)), section 1170.95, subdivision (c), requires the court to appoint counsel to represent the petitioner, if requested; to direct the prosecutor to file a response to the petition and permit the petitioner to file a reply; and to determine if the petitioner has made a prima facie showing that he or she is entitled to relief. (See *Lewis*, *supra,* __ Cal.5th at p. ___ [p. 5].)

In determining whether the petitioner has carried the burden of making the requisite prima facie showing he or she falls within the provisions of section 1170.95 and is entitled to relief, the superior court properly examines the record of

12

conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, __ Cal.5th at p. ___ [p. 30].)  However, "the prima facie inquiry under subdivision (c) is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause. . . .  However, if the record, including the court's own documents, contain[s] facts refuting the allegations made in the petition, then the court is justified in making a credibility determination adverse to the petitioner." (*Id*. at pp. ___, internal quotation marks omitted [pp. 30-31]; see *People v. Daniel* (2020) 57 Cal.App.5th 666, 675, review granted Feb. 24, 2021, S266336 [any error in denying petition at prima facie stage without appointing counsel is harmless if the record of conviction "conclusively demonstrates" petitioner is ineligible for relief].)

   If the section 1170.95, subdivision (c), prima facie showing has been made, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts.  (§ 1170.95, subd. (d)(1).)  At the hearing the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing.  (§ 1170.95, subd. (d)(3); *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 230, review granted Mar. 10, 2021, S266652; *People v. Lopez* (2020) 56 Cal.App.5th 936, 949, review granted Feb. 10, 2021, S265974; but see *People v. Duke* (2020) 55 Cal.App.5th 113, 123, review granted Jan. 13, 2021, S265309.)  The prosecutor and petitioner

13

may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.  (See *Gentile, supra*, 10 Cal.5th at pp. 853-854; *People v. Drayton* (2020) 47 Cal.App.5th 965, 981.)

> 2. *The Record of Conviction Does Not Establish Delaloza Is Ineligible for Resentencing as a Matter of Law*

It is undisputed Delaloza's jury was instructed he could be convicted of murder as a natural and probable consequence of aiding and abetting Penunuri's aggravated assault of Bissonnette and Arias.  Moreover, as discussed, in holding substantial evidence supported the murder convictions, we focused solely on that now-prohibited basis for finding an accomplice guilty of murder, expressly stating it was unnecessary for the People to have proved Delaloza was aware of and shared Penunuri's intent to commit murder.  Yet the superior court ruled Delaloza had failed to make a prima facie showing of eligibility for relief, concluding, based on its own review of the record, that the jury necessarily found Delaloza had acted with express malice when aiding and abetting Penunuri and thus could still be convicted of murder notwithstanding Senate Bill 1437's amendment to section 188 prohibiting imputation of malice other than in cases of felony murder.

The Attorney General amplifies the superior court's finding, contending, "The jury's verdicts in this case establish that it found appellant guilty under a theory that he directly aided and abetted the murders.  The jury's true findings on the multiple-murder special circumstances indicate it found that appellant, who was not alleged to be the actual killer, necessarily '*with the intent to kill*, aided or assisted in any act in the commission of murder in the first degree.'  (CALJIC

14

No. 8.80.1 . . . .)[10]  Likewise, appellant's conviction for conspiracy to commit murder in count 4 confirmed that the jury found he possessed the intent to kill when he dropped Penunuri off at Bissonnette's house."

The Attorney General's description of the rationale for the jury's verdict might well be correct; but we cannot say the record of conviction indisputably established the jury found Delaloza guilty as a direct aider and abettor of Penunuri's murder of Murillo and Molina, as required to deny the petition for resentencing without issuing an order to show cause and conducting an evidentiary hearing.  (See, e.g., *People v. Gonzalez* (2021) 65 Cal.App.5th 420, 429; *People v. Aleo* (2021) 64 Cal.App.5th 865, 873.)  First, that is clearly not the import of our decision affirming Delaloza's convictions, which, as the Supreme Court recently held in *Lewis, supra,* __ Cal.5th at page ___ [p. 24], is properly considered part of the record of conviction when evaluating a petitioner's prima facie case under section 1170.95.

Second, as the Attorney General contends, a properly instructed jury's multiple-murder special-circumstance finding would establish the jury found the defendant had acted with the intent to kill.  Here, however, the jury was given an essentially nonsensical instruction:  If it found Delaloza was not an aider

---

[10]     Although the superior court did not identify the multiple-murder special-circumstance finding as the basis for denying Delaloza's petition, referring in far more general terms to the jury's necessary finding of intent, the Attorney General argues an appellate court will generally affirm a trial court's ruling if correct on any ground, even if the court's reasoning was incorrect. (See, e.g., *People v. Brooks* (2017) 3 Cal.5th 1, 39; *People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12.)

15

and abettor, then it could find the special circumstance true if he was an aider and abettor who acted with the intent to kill. Moreover, the oral version of the instruction, which the Attorney General quotes in support of this argument, incorrectly (and confusingly) referred to aiding and abetting "in an act" in the commission of murder, while the written version of the instruction properly referred to aiding and abetting "any actor." (See footnote 4, above.) Perhaps the jury was sufficiently insightful to decode the correct import of CALJIC No. 8.80.1 notwithstanding the trial court's multiple errors when using it. But we are not prepared to attribute any meaning as a matter of law to the jury's true finding under these circumstances.

Finally, although the Attorney General argues that, in finding Delaloza guilty of conspiracy to commit murder, the jury unquestionably found he had the specific intent to murder at least Bissonnette, the People, when urging this court to affirm the conspiracy conviction in Delaloza's direct appeal, contended we could do so by finding the evidence sufficient to support a finding of a common intent, and hence agreement, to commit either murder or an armed assault. As discussed, we accepted that argument and affirmed the conviction on the ground there was a conspiracy to commit an aggravated assault; the murders, we held, were the natural and probable consequence of that agreement. The inconsistent position now advanced by the Attorney General may be proper at an evidentiary hearing after the superior court issues an order to show cause; it has no place in evaluating whether Delaloza has made a prima facie case for relief.

In any event, even if the jury found that Delaloza shared Penunuri's intent to kill Bissonnette, and not just to commit an

16

assault, pursuant to amended section 188, subdivision (a)(3), Delaloza would be ineligible for resentencing relief as a matter of law only if that finding necessarily meant he acted with malice as a principal in the murders of Murillo and Molina without imputing malice based solely on his participation in the conspiracy to kill Bissonnette. The record does not permit that conclusion.

The record is not clear whether Penunuri, once he was on the patio, killed Murillo and Molina by mistake, believing they were Bissonnette and Arias; recognized Murillo and Molina and intended to kill them for some reason; or simply decided to shoot the two people on the patio whoever they were, regardless of the initial intent of his agreement with Delaloza. Because he waited in his car for Penunuri, Delaloza was not privy to Penunuri's patio thought-process. Given that gap in the evidence and in light of the several different theories on which the jury could have convicted Delaloza of murder—as a direct aider and abettor of Penunuri in committing the murders; as an aider and abettor of Penunuri in committing an aggravated assault on the victims; or as a coconspirator who intended that Bissonnette be killed even if Penunuri's murder of Murillo and Molina was unintended—the record of conviction fails to demonstrate, as a matter of law, the basis for the jury's verdict and thus whether Delaloza is necessarily ineligible for resentencing under section 1170.95.

## DISPOSITION

The postjudgment order denying Delaloza's petition for resentencing is reversed. On remand the superior court is to issue an order to show cause and to conduct further proceedings in accordance with section 1170.95, subdivision (d).


              PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.